UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | |
|---|---|
| GERALD A. TAYLOR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LIFE PARTNERS HOLDINGS, INC., BRIAN D. PARDO, DAVID M. MARTIN, and NINA PIPER, <br><br> Defendants. | ) No. DR-11-CV-00018-AM <br> ) <br> ) CLASS ACTION <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| SELMA STONE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LIFE PARTNERS HOLDINGS, INC., BRIAN D. PARDO, DAVID M. MARTIN, and NINA PIPER, <br><br> Defendants. | ) No. DR-11-CV-00016-AM <br> ) <br> ) CLASS ACTION <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

*[Captions Continue on Following Pages]*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF J. MALCOLM GRAY AND MARK A. WALLENBROCK FORCONSOLIDATION OF RELATEDACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL**

| | |
|---|---|
| JEREMY GOAD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LIFE PARTNERS HOLDINGS, INC., BRIAN D. PARDO, DAVID M. MARTIN, and NINA PIPER,<br><br>Defendants. | ) No. DR-11-CV-00017-AM<br>)<br>) CLASS ACTION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| JOY DITTBERNER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LIFE PARTNERS HOLDINGS, INC., BRIAN D. PARDO, DAVID M. MARTIN, and NINA PIPER,<br><br>Defendants. | ) No. DR-11-CV-00019-AM<br>)<br>) CLASS ACTION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| DAVID G. SANTACROCE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LIFE PARTNERS HOLDINGS, INC., BRIAN D. PARDO, DAVID M. MARTIN, and NINA PIPER,<br><br>Defendants. | ) No. DR-11-CV-00020-AM<br>)<br>) CLASS ACTION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

*[Captions Continue on Following Page]*

| | |
|---|---|
| J. MALCOLM GRAY, Individually and on Behalf of All Others Similarly Situated, | ) <br> ) No. DR-11-CV-00021-AM <br> ) |
| Plaintiff, | ) CLASS ACTION <br> ) |
| v. | ) <br> ) |
| LIFE PARTNERS HOLDINGS, INC., BRIAN D. PARDO, DAVID M. MARTIN, and NINA PIPER, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**MEMORANDUM OF LAW**

This memorandum of law is submitted by plaintiffs J. Malcolm Gray and Mark A. Wallenbrock ("Movants") in support of their motion for consolidation of all the above-captioned actions, appointment as lead plaintiff for the consolidated action, and approval of Harwood Feffer LLP and Glancy Binkow & Goldberg LLP as co-lead counsel, with The Briscoe Law Firm PLLC liaison counsel.

Movants seek consolidation of the related actions pursuant to Fed. R. Civ. P. Rule 42(a) and appointment as lead plaintiff pursuant to the Securities Exchange Act of 1934 (the "Exchange Act") and the Private Securities Litigation Reform Act of 1995 (the "PLSRA").

## I.   FACTUAL BACKGROUND

This is a securities class action on behalf of purchasers of defendant Life Partners Holdings Inc.'s ("Life Partners" or the "Company") securities between May 29, 2007, and January 20, 2011, inclusive (the "Class Period"), seeking to pursue remedies against defendants[1] under the Securities Exchange Act of 1934 (the "Exchange Act").

Life Partners, through its subsidiary, Life Partners, Inc., operates in the secondary market for life insurance, generally known as "life settlements." Life settlement transactions involve the sale of an existing life insurance policy to another party. By selling the policy, the policyholder receives an immediate cash payment to use as he or she wishes. The purchaser takes an ownership interest in the policy at a discount to its face value and receives their ownership interest in the death benefit under the policy when the insured dies. The Company's operating revenues are derived from fees for facilitating life settlement transactions between sellers and purchasers.  Since its incorporation in 1991, Life Partners claims to have completed over 127,000 transactions for its

client base in connection with the purchase of over 6,400 policies totaling approximately $2.8 billion in face value.

The Complaints allege that on February 11, 2009, a research firm published a report that called into question Life Partners business practices relating to the determination of life expectancies and the Company's practice of charging egregious fees on their transactions. On this news, the Company's shares declined $2.82 per share, or 13.67 percent, to close on February 11, 2009, at $17.82 per share, on unusually heavy trading volume.

Thereafter, on December 21, 2010, the *Wall Street Journal* published a series of articles questioning the Company's life-expectancy estimates and business practices. The articles questioned the Company's business model and noted that Life Partners "has made large fees from its life-insurance transactions while often significantly underestimating the life expectancies of people whose policies its customers invest in." In particular, the article highlighted that the Company relied solely on life expectancy calculations provided by a doctor in Reno, Nevada, who is paid a monthly retainer by Life Partners, and that an analysis of his calculations shows that he regularly provides the Company with estimates that are significantly shorter- hence, more profitable for the Company - than calculations provided by independent firms.

On January 20, 2011, the *Wall Street Journal* published a further article disclosing that the Securities and Exchange Commission ("SEC") was investigating Life Partners' business practices relating to how the Company estimated the life expectancies of the individuals whose life insurance policies the Company was selling the rights to. Later that same day, the Company issued a press release in which it confirmed that the SEC was conducting an investigation into the business of its operating subsidiary, Life Partners, Inc. On this news, shares of Life Partners declined by $2.58 per share, more than 17%, to close on January 20, 2011, at $12.46 per share, on unusually high

volume, and further declined another $0.64 per share, more than 5%, to close on January 21, 2010, at $11.82 per share, also on unusually high volume.

The Complaints allege that throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company had routinely used unrealistic life expectancy data that produced inaccurately short life expectancy reports, which were subsequently used to sell life settlement policies to investors; (2) that the Company had purposely concealed the historical rate in which individuals insured by life settlement policies sold by Life Partners had lived past the life expectancy rates previously provided to investors, such that the Company's investors were unable to assess the accuracy or reliability of such data; (3) that by underestimating the life expectancy data to investors, the Company was able to charge substantially larger fees when brokering life settlement policies; (4) that the Company's revenues had been significantly increased through the employment of such business practices; (5) that, as a result, the Company's financial statements were false and misleading at all relevant times; (6) that such business practices, when they were discovered, would initiate an investigation by the federal authorities into the Company's business practices; (7) that the Company lacked adequate internal and financial controls; and (8) that, as a result of the foregoing, the Company's statements about its financial well-being and future business prospects were lacking in any reasonable basis when made.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the Complaints allege that Plaintiff and other Class members have suffered significant losses and damages.

## II.     PROCEDURAL HISTORY

Plaintiff Gerald A. Taylor commenced the first of the five, above-captioned related actions (the "Taylor Action") on February 2, 2011, and on that day counsel for Taylor published a notice of the pendency of the *Taylor* Action on *PR Newswire*. *See* Declaration of Willie Briscoe In Support of Motion of J. Malcolm Gray and Mark A. Wallenbrock For Consolidation of Related Actions, Appointment As Lead Plaintiff and Approval of Co-Lead Counsel ("Briscoe Decl."), submitted herewith at Exhibit A.

Movant Gray's action subsequently was filed in this District in the Waco Division naming the same defendants, and alleging the same factual events and the same legal bases for their claims, specifically Sections 10(b) and 20(a) of the Exchange Act as amended by the PSLRA, 15 U.S.C. §§ 78j(b) and 78t(a).  The *Gray* Action and four of the above-captioned actions (those filed by Plaintiffs Taylor, Goad, Dittberner, and Santacroce) were transferred to this Court by Judge Walter S. Smith, Jr. by Order dated May 17, 2011.

Movants bring the instant motion for, *inter alia*, appointment as lead plaintiff in the above-captioned actions (the "Related Actions"), and file this motion prior to expiration of the 60-day period from publication of plaintiff Taylor's February 2, 2011 notice.

## III.    ARGUMENT

### A.     The Related Actions Should Be Consolidated

Consolidation pursuant to Federal Rule of Civil Procedure Rule 42(a) is proper when actions involve common questions of law and fact.  *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  The Court has broad discretion under this Rule to consolidate cases pending within its District. *Id.*

The Related Actions present similar factual and legal issues, as they involve the same subject matter, and present the same legal issues. Each alleges the same violations of federal securities laws, and is based on the same wrongful course of conduct. Each names the Company and certain of its officers and/or directors as defendants. Because the Related Actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to the Related Actions. Indeed, even if there are significant differences among the claims in the various cases and there are also substantial commonalities, involving "overlapping [d]efendants and a common core of facts and legal issues." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002), "consolidation, at least pretrial, serves to promote an orderly progression of this very complex litigation." *Id.* Accordingly, consolidation under Rule 42(a) is appropriate.

### B.     Movants Should Be Appointed Lead Plaintiff

Section 21D(a)(3)(B) of the PSLRA provides the procedure for selecting lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 60 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as lead plaintiff is the person or group of persons that:

    (aa)  has either filed the complaint or made a motion in response to a notice. . . ;

    (bb)  in the determination of the Court, has the largest financial interest in the relief sought by the class; and

    (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movants satisfy all three of these criteria and thus are entitled to the presumption that they are the "most adequate plaintiff" for the Class.

### 1. Movants are Making A Motion In Response To A Notice

Plaintiff Taylor commenced his action on February 2, 2011, and on that day, pursuant to § 21D(a)(3)(A)(I) of the PSLRA, Taylor's counsel published a notice of pendency of the Taylor's Action announcing that a securities class action had been filed against Defendants herein, and advising purchasers of Life Partners securities that they had 60 days from that date, to file a motion to be appointed as lead plaintiff. Movants file the instant motion pursuant to Taylor's published notice, having filed their sworn certifications attesting that theya re willing to serve as representatives of the Class and willing to provide testimony at deposition and trial, if necessary. *See* Briscoe Decl., Exhibit B. Movants therefore satisfy the requirement of either filing a complaint or making a motion in response to a published notice. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

### 2. Movants have The Largest Financial Interest In This Action

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

During the Class Period, Movants purchased securities of Life Partners at prices alleged to be artificially inflated by defendants' materially false and misleading statements and omissions and, as result, suffered collective financial losses of $37,212.49.[2] *See* Briscoe Decl., Exhibit C. In *Enron*, the court used a four-factor inquiry that courts in other districts have previously applied, considering: "(1) the number of shares purchased; (2) the number of net

shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Enron*, 206 F.R.D. at 440.

To the best of their knowledge, Movants believe that, based on the *Enron* factors, they have the largest known financial interest in this case of any Class member who timely filed an application for appointment as lead plaintiff, and thus satisfy the largest financial interest requirement to be appointed as lead plaintiff for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb).

### 3. Movants Satisfy The Requirements of Fed. R. Civ. P. 23

To qualify as presumptive *lead* plaintiffs, a plaintiff or group of plaintiffs must also satisfy the requirements of Rule 23 – in particular, "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3) and (4); *see Enron*, 206 F.R.D. at 441 ("Typicality and adequacy are directly relevant to the choice of the Lead Plaintiff as well as of the class representative in securities fraud class actions. . . ."), as quoted in *In re: BP, PLC Sec. Litig.*, No. 10-md-2185, 2010 U.S. Dist. LEXIS 136781, at *21 (S.D. Tex. Dec. 28, 2010).

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. "Although the inquiry at this stage of the litigation in selecting Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and has the capacity to provide adequate representation for those class members." *Enron*, 206 F.R.D. at 441; *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) ("A comprehensive reading of the statute reveals that, at this stage of the proceedings, [the proposed lead plaintiff] need only make a preliminary showing that it satisfies [the typicality and adequacy] requirements."). Courts thus limit their inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until class certification. *City of Harper Woods Employees Ret. Sys. v. AXT, Inc.,* 2005 WL 318813, at *3 (N.D. Cal. Feb. 7, 2005) ("when a court assesses a lead plaintiff motion, the inquiry should be focused on the typicality and adequacy requirements of Rule 23").

### a.     Movants' Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

"Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal

theory, factual differences will not defeat typicality." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001) citing 5 James Wm. Moore, *et al.*, *Moore's Federal Practice* ¶ 23.24[4] (3d ed. 2000)).

Here, Movants' claims are typical of the claims asserted by the Class. Movants, like all members of the Class, allege that defendants violated the Exchange Act by publicly disseminating a series of false and misleading statements concerning Life Partners's business, operations and financial prospects. Movant, like all of the members of the Class, purchased Life Partners securities during the Class Period at prices artificially inflated by defendants' misrepresentations and omissions, and was damaged thereby. Thus, Movants' claims are closely aligned with other Class members', and they are, therefore, typical of the other members of the Class.

### b.     Movants Are Adequate Representatives

With regard to the adequacy requirement, "'[d]ifferences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests.' *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999)." *BP*, 2010 U.S. Dist. LEXIS 136871, at *23.

Movants have demonstrated their adequacy as lead plaintiff by evincing a strong desire to prosecute this action on behalf of the Class, and have shown that they are willing and able to take an active role in and control the litigation. Movants have communicated with experienced counsel concerning this case and have made this motion to be appointed lead plaintiff. Movants are not aware of any antagonism between their interests and those of other Class members. Moreover, Movants have sustained substantial financial losses – approximately $37,212 – from

their investments in Life Partners stock and are, therefore, extremely motivated to pursue the claims in this action. *See* Briscoe Decl., Exhibit C.

### 4. Movants Are Presumptively The Most Adequate Lead Plaintiff

The presumption in favor of appointing Movants as lead plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interest of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78 u-4(a)(3)(b)(iii)(I).

The presumption that Movants are the most adequate lead plaintiff is not, therefore, subject to rebuttal. Movants believe that they have the largest financial interest in this case among Class members who timely filed motions for appointment as lead plaintiff. Movants' ability to fairly and adequately represent the Class is discussed above. Movants are not aware of any unique defenses defendants could raise against them that would render Movants inadequate to represent the Class. *See BP,* 2010 U.S. Dist. LEXIS 136871, at *22 n.6. In addition, Movants have selected and retained competent and experienced counsel to represent him and the Class. *See Richardson v. TVIA, Inc.,* 2007 WL 1129344, at **4-5 (N.D. Cal. Apr. 16, 2007)("The adequacy requirement is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation."). Accordingly, Movants should be appointed lead plaintiff for the Class.

### B. The Court Should Approve Movants' Choice of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* § 21D(a)(3)(B)(v) of the Exchange Act. Thus, the Court should

not disturb the lead plaintiff's choice of counsel unless necessary to protect the interests of the plaintiff class. *See BP,* 2010 U.S. Dist. LEXIS 136871, at *44. In the present case, Movants have retained Harwood Feffer LLP and Glancy Binkow & Goldberg LLP to pursue this litigation on their behalf, with The Briscoe Law Firm PLLC as liaison counsel, and will retain these firms as plaintiff's co-lead counsel, in the event Movants are appointed lead plaintiff. Harwood Feffer LLP and Glancy Binkow & Goldberg LLP possess extensive experience in securities litigation and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors, as reflected by their resumes annexed to the Briscoe Decl. at Exhibits D and E, respectively. Thus, the Court may be assured that, by granting Movants' motion, the Class will receive the highest caliber of legal representation.

### IV.  CONCLUSION

For the foregoing reasons, Movants respectfully ask the Court to grant their motion and enter an Order (a) consolidating the above-captioned Related Actions, (b) appointing J. Malcolm Gray and Mark A. Wallenbrock as lead plaintiff in the Consolidated Action, and (c) approving Movants' selection of Harwood Feffer LLP and Glancy Binkow & Goldberg LLP as co-lead counsel, and granting such other relief as the Court may deem just and proper.

DATED: April 4, 2011                                **THE BRISCOE LAW FIRM, PLLC**

                                                           /s/ *Willie C. Briscoe*
                                                         Willie C. Briscoe (#24001788)
                                                         The Preston Commons
                                                         8117 Preston Road, Suite 300
                                                         Dallas, Texas 75255
                                                         Telephone: (214) 706-9314
                                                         Facsimile: (214) 706-9315

                                                         **HARWOOD FEFFER LLP**
                                                         Robert I. Harwood

Samuel K. Rosen
488 Madison Ave., 8th Floor
New York, New York 10022
Telephone:  (212) 935-7400
Facsimile:   (212) 753-3630

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Ex Kano S. Sams II
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Movants and*
*Proposed Co-Lead Counsel*